# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION


CRAIG OUTDOOR ADVERTISING,    )
ET AL.                        )
                              )
                              )
                              )    Civil No.  04-0074-CV-W-DW
VS.                           )
                              )
VIACOM OUTDOOR, INC., ET AL.  )


## COURT'S INSTRUCTIONS USED DURING DELIBERATIONS


7-21-2005

*Original*

# NO. __1__

Ladies and gentlemen:

I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions – both those I give you now and those I give you later – are equally binding on you and must be followed.

This is a civil case brought by the plaintiffs against the defendants. The plaintiffs allege that the defendants Viacom Outdoor, Inc. (Viacom), Wally Kelly, Randal F. Romig, Randy Jackson, and Harold Gustin made material misrepresentations in processing billboard applications and wrongfully denied plaintiffs' applications to lease billboard sites, through fraudulent conduct that violated a Federal statute – the Racketeer Influenced Corrupt Organization Act – and various state laws. The defendants deny those allegations. It will be your duty to decide from the evidence whether the plaintiffs are entitled to a verdict against defendants.

From the evidence you will decide what the facts are. You are entitled to consider that evidence in the light of your own observations and experiences in the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their

opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

# NO. 2

I have mentioned the word "evidence." "Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated – that is, formally agreed to by the parties.

Certain things are not evidence. I will list those things for you now:

1.      Statements, arguments, questions and comments by lawyers are not evidence.

2.      Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3.      Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4.      Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence and must not be considered.

5.      Anything you see or hear about this case outside the courtroom is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

# NO. _3_

During the trial it may be necessary for me to speak with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

# NO. 4

At the end of the trial you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult. You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note-taking distract you so that you do not hear other answers by the witness. The Clerk will provide each of you with a pad of paper and a pen or pencil. At each recess, leave them in the Jury Room. When you leave at night, your notes will be secured and not read by anyone.

## NO. _5_

Finally, to insure fairness, you as jurors must obey the following rules:

*First*, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second*, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to me.

*Fourth*, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth*, do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it. In fact, until the trial is over I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any TV or radio newscasts at all. I do not know whether there might be any news reports of this case, but if there are you might inadvertently find yourself reading or listening to something before you could do anything about it. If you want, you can have your spouse or a friend

clip out any stories and set them aside to give you after the trial is over. I can assure you, however, that by the time you have heard the evidence in this case, you will know more about the matter than anyone will learn through the news media.

*Sixth*, do not do any research (including research in the dictionary) or make any investigation about the case on your own.

*Seventh*, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

# NO. 6

The trial will proceed in the following manner:

First, the plaintiffs' attorney may make an opening statement. Next, the defendants' attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

The plaintiffs will then present evidence and counsel for defendants may cross-examine. Following the plaintiffs' case, the defendants may present evidence and plaintiffs' counsel may cross-examine.

After presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. The court will instruct you further on the law. After that you will retire to deliberate on your verdict.

# NO. 2

The plaintiffs and the defendants have stipulated – that is, they have agreed – that certain facts are as counsel have stated.  You should, therefore, treat those facts as having been proved.

NO. 8

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because <u>all</u> are important.

The instructions I am about to give you now as well as those I gave you earlier are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than any instruction I gave during the course of the trial. Again, <u>all</u> instructions, whenever given and whether in writing or not, must be followed.

NO. 9

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdicts should be.

## NO. 10

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness's intelligence, the opportunity a witness had to see or hear the things testified about, a witness's memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

NO. 11

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by the preponderance of the evidence. To prove something by the preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable.

If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved. The preponderance of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

Clear and convincing evidence is a standard more exacting than a preponderance of the evidence. To satisfy this standard, Plaintiffs must provide evidence that induces in your mind a reasonable belief that the facts are highly probably true, and that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. You must apply this clear and convincing standard of proof only to Plaintiffs' punitive damage claims, as submitted in Instruction No. 50 and to Patriot Outdoor's state law fraud claim, as submitted in Instruction No. 31, + 33 .

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

NO. 12

An assignment of rights is a transfer by the owner of those rights to another party. An "assignor" is the party who assigns or transfers the rights, and an "assignee" is the party to whom the rights are transferred or assigned. An assignment passes all of the assignor's title or interest to the assignee, and divests the assignor of all right of control over the subject matter of the assignment. In this case, Plaintiff Midwest Outdoor Media contends that a company called Ad Trend, who is not a party to this case, assigned its rights in the Highway 150 and I-670 billboard sites to Midwest.

# NO. 13

In this case, one of the Plaintiffs and one of the Defendants are corporations. The mere fact that these parties are corporations does not mean they are entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

NO. 14

A corporation is a creation of state law and can act only through its agents – that is, its employees, officers or authorized representatives. In order to find that the act of an agent was binding on the corporation you must find that the agent had authority to act in the manner in which he or she is alleged to have acted.

This authority may be express, apparent or inherent. Express authority is created by the direct verbal or written giving of that authority by the corporation to its agent. For example, express authority to perform certain duties may be part of an employee's contract.

Apparent authority, on the other hand, is the authority which a principal by reason of its acts and conduct leads a third person reasonably to believe that its agent possesses. Apparent authority can be created by appointing a person to a position, such as manager, treasurer or other, which position carries generally recognized duties. In other words, apparent authority is based on a "holding out to the world" of the agent, in his particular position, by the corporation. To third parties who deal with this agent, knowing of his position, the agent has apparent authority to do all those things ordinarily done by someone in that position, regardless of any unknown limitations which are imposed on the particular agent. In such circumstances, the corporation is bound to third parties, who are unaware of any lack of authority to the same extent as if the power to act had been directly conferred. Therefore, if you find that the corporation has, by reason of its words or conduct, led a third party to rely on the appearance of the agent's authority to act on behalf of all the facts and circumstances of the particular case, then the corporation is responsible for such acts of its agent as if the corporation itself committed the acts.

There are also situations in which an agent has inherent authority to bind the corporation even where the corporation has not granted the employee either the express or apparent authority to act on its behalf. This inherent authority may exist, provided the acts in question are within the scope of his employment, even though the acts may be criminal or tortious. An act is within the scope of employment if it is sufficiently related to the kind the employee was employed to perform, if it was done substantially within the time and space limits of the job and was actuated, at least in part, by

a purpose to serve the corporation.

Therefore, if you find that the agent acted with express, apparent, or inherent authority to bind the corporation, you may find that the corporation was responsible for his conduct.

NO. 15

The Plaintiffs, Craig Outdoor Advertising, Midwest Outdoor Media, and Patriot Outdoor, have alleged in their complaint that the individual Defendants, Wally Kelly, Randal F. Romig, Randy Jackson, and Harold Gustin, violated a federal statute, Section 1962(c) of Title 18 of the United States Code, which is commonly referred to as the Racketeer Influenced and Corrupt Organization Act or RICO. Plaintiffs do not have a RICO claim against Viacom Outdoor.

Section 1962(c) of RICO makes it illegal for any person employed by or associated with any enterprise engaged in interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of that enterprise's affairs through a "pattern of racketeering activity."

The Plaintiffs must establish by a preponderance of the evidence every element of a RICO claim. You should consider each and every element of a RICO cause of action only in the precise way that the elements are defined in these instructions. You must avoid confusing any of the elements of a RICO claim with your prior conceptions of the meaning of the terms that are used to describe the elements of a RICO claim.

NO. 16

## RICO

Your verdict must be for Plaintiffs on their civil RICO claim if you believe:

First, that an enterprise existed;

Second, that the enterprise affected interstate or foreign commerce;

Third, that each Defendant was associated with or employed by the enterprise;

Fourth, that each Defendant knowingly engaged in a pattern of racketeering activity;

Fifth, that each Defendant knowingly conducted or participated in the conduct of the enterprise through that pattern of racketeering activity;

Sixth, that each Plaintiff reasonably relied to its detriment on the predicate acts of a Defendant which constituted the racketeering activity; and

Seventh, that each Plaintiff was injured in his business or property by reason of the racketeering activity.

NO. 17

## RICO

Your verdict must be for the Defendants under Instruction No. 16 unless you believe:

First, that an enterprise existed;

Second, that the enterprise affected interstate or foreign commerce;

Third, that each Defendant was associated with or employed by the enterprise;

Fourth, that each Defendant knowingly engaged in a pattern of racketeering activity;

Fifth, that each Defendant knowingly conducted or participated in the conduct of the enterprise through that pattern of racketeering activity;

Sixth, that each Plaintiff reasonably relied to its detriment on the predicate acts of a Defendant which constituted the racketeering activity; and

Seventh, that each Plaintiff was injured in his business or property by reason of the racketeering activity.

NO. 18

The first element that the Plaintiffs must prove is that an "enterprise" existed as alleged in the complaint.

For the purposes of this case, an enterprise includes any legal entity, such as a corporation.

The Plaintiffs have alleged that the enterprise in this case is Viacom Outdoor itself. If you find that Viacom Outdoor was, in fact, a corporation, then you may find that an enterprise existed. The parties have stipulated that Viacom Outdoor is a corporation.

NO. 19

In considering the second element you should know that interstate commerce includes the movement of goods, services, money and individuals between states.

To succeed on the second element, the Plaintiffs must prove that the enterprise engaged in interstate commerce or that its activities affected interstate commerce. It is not necessary to prove that the Defendants' acts affected interstate commerce as long as the acts of the enterprise had such an effect. Finally, the Plaintiffs are not required to prove that the Defendants knew they were affecting interstate commerce.

NO. 20

The third element that the Plaintiffs must prove is that each of the Defendants were associated with, or employed by, the enterprise.

It is not required that a Defendant be employed by, or associated with, the enterprise for the entire time that the enterprise existed. It *is* required, however, that the Plaintiffs prove, by a preponderance of the evidence, that at *some* time during the period indicated in the complaint, the Defendant in question was employed by, or associated with, the enterprise.

A person cannot be associated with, or employed by, an enterprise, if he or she does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the Plaintiffs must prove, by a preponderance of the evidence, that the Defendant was connected to the enterprise in some meaningful way and that the Defendant knew of the existence of the enterprise and of the general nature of its activities.

The fourth element that the Plaintiffs must prove is that each of the Defendants engaged in a pattern of racketeering activity.

The Plaintiffs have alleged that each of the Defendants committed or participated in the commission of the following racketeering acts:

1.    Engaging in a scheme to defraud that resulted in the use of the U.S. Mail or a private interstate carrier such as UPS or Federal Express in violation of 18 U.S.C. § 1341;

2.    Engaging in a scheme to defraud that resulted in the use of so-called interstate "wires"—primarily the telephone, facsimile transmissions, and e-mail—in violation of 18 U.S.C. § 1343.

Further the Defendants must have committed two of these acts within ten years of each other.

To prove that the acts constituted a pattern of racketeering activity, the Plaintiffs must prove that the acts of racketeering are related to each other and that they pose a threat of continued criminal activity. The proof of two or more predicate acts does not in and of itself establish a "pattern" under RICO. A series of wholly separate, isolated or disconnected acts of racketeering activity does not constitute a pattern, nor does it amount to, or pose a threat of, continued racketeering activity.

To prove that the acts of racketeering are related, the Plaintiffs must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the racketeering acts pose a threat of continued racketeering activity, the Plaintiffs must establish that (1) the acts are a regular way of conducting Defendant's ongoing, legitimate business, or (2) the acts are a regular way of conducting or participating in an ongoing legitimate RICO enterprise.

To determine whether the Plaintiffs have established by a preponderance of the evidence that these predicate acts were committed, you must understand the elements of the statute the Plaintiffs allege the Defendants violated.

The mail fraud statute has four essential elements, which are:

One, the Defendant voluntarily and intentionally devised, made up, or participated in a scheme to defraud another out of money, property or property rights or the intangible right to honest services. The Plaintiffs generally describe the Defendants' alleged scheme as follows:

> The Defendants devised a scheme in which they would represent to businesses and individuals interested in building a billboard on railroad rights-of-way that Viacom was acting exclusively as the agent for those railroads; further they would represent that the applications to build on these rights-of-way would be evaluated on a first-come, first-served basis; Defendants would not reveal that Viacom had decided to review each site submitted to decide if Viacom wanted to take the best sites for itself; and that these representations and omissions were made all in an effort to take the best sites for Viacom's own use by either falsely stating that another entity had applied first, or by failing to act on the application and simply awarding it to Viacom itself;

Two, the Defendants did so with the intent to defraud;

Three, it was reasonably foreseeable that the mail or a private interstate carrier such as UPS or Federal Express would be used; and

Four, that the mail or a private interstate carrier was used in furtherance of some essential step in the scheme.

When evaluating whether the Plaintiffs have shown by a preponderance of the evidence that these Defendants have engaged in mail fraud you should keep in mind the following:

The phrase "scheme to defraud" includes any plan or course of action intended to deceive or cheat another out of money, property or property rights or the intangible right to honest services by employing material falsehoods, concealing material facts, or omitting material facts. It also means the obtaining of money, property, or the intangible right to honest services from another by means of material false representations or promises.

A representation or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction.

To act with "intent to defraud" means to act knowingly and with the intent to deceive someone for the purpose of causing some loss of property or property rights or the loss of an intangible right to honest services to another or bringing about some financial gain to oneself or another to the detriment of a third party.

A statement or representation is "false" when it is untrue when made or when it effectively conceals or omits a material fact. With respect to false statements the Defendant must have known the statement was untrue when made or have made the statement with reckless indifference to its truth or falsity.

The term property rights, as used in the mail fraud statute, includes intangible as well as tangible property rights. It includes any property right which has a value—not necessarily a monetary value—to the owner of the property right. For example, a scheme to deprive a company of the exclusive use of confidential business information obtained by the employees would be a scheme to deprive the company of intangible property rights.

It is not necessary that the use of the mail or an interstate carrier by the participants themselves be contemplated or that the Defendant do any actual mailing or actually send any material by an interstate carrier or that the Defendant specifically intend that the mail or an interstate carrier

be used. It is sufficient if the mail or an interstate carrier was in fact used to carry out the scheme and the use of the mail or an interstate carrier by someone was reasonably foreseeable.

Mailings which are designed to lull victims into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the scheme.

Each separate use of the mail or an interstate carrier in furtherance of the scheme to defraud constitutes a separate predicate act.

The Plaintiffs allege that each Defendant, along with the other Defendants, devised or participated in a scheme to take billboard sites. The Plaintiffs need not prove, however, that the Defendants met together to formulate the scheme charged, or that there was a formal agreement among them, in order for them to be held jointly responsible for the operation of the scheme and the use of the mail or an interstate carrier for the purpose of accomplishing the scheme. It is sufficient if only one person conceives the scheme and the others knowingly, voluntarily and intentionally join in and participate in some way in the operation of the scheme in order for such others to be held jointly responsible.

Likewise, it is not necessary that the Plaintiffs prove that the material mailed or sent by an interstate carrier was itself false or fraudulent, or that the use of the mail or an interstate carrier was intended as the specific or exclusive means of accomplishing the alleged fraud.

The elements of wire fraud are identical to the elements of mail fraud with one exception: the Defendant must cause interstate wire facilities to be used instead of causing the mail to be used. This means that you can consider the same scheme described above in determining if wire fraud was committed if the Defendants could reasonably have foreseen that interstate telephone calls, facsimile transmissions, or e-mails would be used and that they were, in fact used.

The same definitions for "scheme to defraud," "materiality," "intent to defraud," and "property rights" apply with wire fraud. It is not necessary that the use of the wires by the participants themselves be contemplated or that the Defendant actually use the wires — usually in the form of telephone calls, facsimile transmissions or email — or that the Defendant specifically intend that interstate wires be used. Finally, each use of interstate wires in furtherance of the scheme to defraud constitutes a separate predicate act.

# NO. 25

One of the issues in this case is whether Defendants acted in good faith. Good faith is a complete defense to the predicate offenses of wire and mail fraud if it is inconsistent with the intent to defraud, which is an essential element of those predicate offenses.

Fraudulent intent is not presumed or assumed; it is personal and not imputed. One is chargeable with his own personal intent, not the intent of some other person. Bad faith is an essential element of fraudulent intent. Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element. One who acts with honest intention is not chargeable with fraudulent intent. Evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent. In order to establish fraudulent intent on the part of a person, it must be established that such person knowingly and intentionally attempted to deceive another. One who knowingly and intentionally deceives another is chargeable with fraudulent intent notwithstanding the manner and form in which the deception was attempted.

Evidence that a Defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not the Defendant acted with the intent to defraud.

NO. 26

The Plaintiffs allege that the Defendants committed numerous racketeering acts. The Plaintiffs satisfy their burden under the fourth RICO element if they prove by a preponderance of the evidence that at least two of the alleged racketeering acts were committed by each Defendant within the prescribed time, and are sufficiently related to constitute a pattern.

There must be at least two specific racketeering acts that you unanimously find by a preponderance of the evidence were committed by a Defendant in order to satisfy this element as to that particular Defendant. It is not enough if some of you think that only racketeering acts A and B were committed by a Defendant, and the rest of you think that only acts C and D were committed by the same Defendant.

The fifth element that the Plaintiffs must prove is that each of the Defendants conducted, or participated in, the conduct of the enterprise through that pattern of racketeering activity.

To conduct or participate in the conduct of the enterprise means that the Defendants must have played some part in the operation or management of the enterprise. The Plaintiffs are not required to prove that the Defendants were a member of upper management. An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under the direction of upper management.

In addition to proving that each of the Defendants played some part in the operation or management of the enterprise, the Plaintiffs must also prove that there is some meaningful connection between the Defendants' illegal acts and the affairs of the enterprise. To satisfy this part of the element, the Plaintiffs must establish either (1) that the Defendants' positions in the enterprise facilitated the commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise, (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the Defendants were able to commit the acts by virtue of their position, or involvement in, the affairs of the enterprise.

A person does not violate the law by merely associating with or being employed by an otherwise lawful enterprise the affairs of which are being conducted by others through a pattern of racketeering activity in which he is not personally engaged.

The sixth element that Plaintiffs must prove is reasonable reliance.

Plaintiffs must establish that they reasonably relied, to their detriment, on the alleged predicate acts and that they were damaged by that reliance.

To establish reasonable reliance, the Plaintiffs must prove that they used that degree of care that would have been reasonable in Plaintiffs' situation.

NO. 29

The seventh element that Plaintiffs must prove is causation. For the Plaintiffs to prevail under RICO, they must prove by a preponderance of the evidence that the Defendant's RICO violations were the "proximate cause" of injury to the Plaintiffs' business or property. Therefore you must find that the Plaintiffs suffered an injury to their business or property and that the injury was caused by reason of the Defendants' violation of RICO.

An injury or damage is proximately caused when the act played a substantial part in bringing about or actually causing injury or damage, and the injury or damage was either a direct result or a reasonably probable consequence of the act.

A person is injured in his business when he suffers loss of money or profits or a reduction in the value or worth of his business.

Therefore, you must find that the commission of the acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of the enterprise through the pattern of racketeering activity directly resulted in the injury or played a substantial role in producing the injury.

NO. 30

You reach the issue of damages on the RICO claim only if you find that the Plaintiffs have established the elements of the claim under the standards I have described.

The fact that I charge you on the issue of damages does not mean that the Plaintiffs are entitled to prevail – that is for you to decide. I instruct you on this subject only in the event that you decide that Plaintiffs have sustained the burden of proof as to the elements of the claim under the standards I have described.

If you find that Plaintiffs have established the elements of the claim by a preponderance of the evidence, you should then consider the evidence presented concerning damages to Plaintiffs' business or property which are alleged to be caused by the Defendants' violation of the statute.

The damages alleged by Plaintiffs are the diminution in value of each Plaintiff caused by the actions of Defendants.

You must evaluate each claim of damages and the proof submitted in support of each claim separately and you should award damages only for those claims that you find have been established by a preponderance of the evidence.

If you find that a Plaintiff failed to mitigate damages as submitted in Instruction No. 49, in determining a Plaintiff's total damages you must not include those damages that would not have occurred without such failure.

NO. 31

## FRAUD
### (by misrepresentation)

The Plaintiffs have also asserted a claim against Defendant Viacom Outdoor for fraud. An actionable claim of fraud may be based on either fraudulent misrepresentation or fraudulent omission (concealing a fact one had a duty to disclose). In this case, the Plaintiffs have alleged fraud based both on fraudulent misrepresentation and omission.

A finding by you that the elements for fraudulent misrepresentation *or* fraudulent omission are established is sufficient for you to award damages based on the Plaintiffs' fraud claim. To make the distinction between fraud by false statement and by omission clear, these concepts have been divided into two instructions. You need only find that either a misrepresentation or material omission occurred as to each Plaintiff on its fraud claim. The term "material" as used in these instructions means the fact is one which a reasonable person might be expected to attach importance in making one's choice of action.

Your verdict must be for a Plaintiff on its fraud claim if you believe:

First, that Viacom Outdoor made, or caused to be made, a representation it intended a Plaintiff to rely upon in submitting applications for billboard sites when it stated, or caused others to state, to that Plaintiff or its agent that: (a) applications for sites on railroad properties would be processed on a "first-come, first-served" basis, (b) Viacom Outdoor served exclusively as the agent of its client railroads, or (c) applicants needed to reveal the location of their proposed billboard site in order to apply for the location and to establish they were the first to apply for that site;

Second, that the representation that was made was false;

Third, that Viacom Outdoor knew that the representation was false at the time it was made;

Fourth, the representation was material to the Plaintiff's submission of applications for billboards and the disclosure of proposed billboard locations;

Fifth, the Plaintiff relied on the representation in submitting applications for billboards and in disclosing proposed billboard locations; and in so relying on used that degree of care that would have been reasonable in Plaintiff's situation;

Sixth, as a direct result of such representation the Plaintiff was damaged.

Unless, you believe the Plaintiff is not entitled to recover by reason of Instruction Numbers
40, 42, 44, 46.

For purposes of satisfying the second and third elements of this instruction, every member of the jury must unanimously agree that a particular representation made was false.

NO. 32

## FRAUD
### (by misrepresentation)

Your finding must be for Defendant Viacom Outdoor under Instruction Number 31 unless you believe the following:

First, that Viacom Outdoor made, or caused to be made, a representation it intended a Plaintiff to rely upon in submitting applications for billboard sites when they stated, or caused others to state, to that Plaintiff or their agent that: (a) applications for sites on railroad properties would be processed on a "first-come, first-served" basis, (b) Viacom Outdoor served exclusively as the agent of its client railroads, or (c) applicants needed to reveal the location of their proposed billboard site in order to apply for the location and to establish they were the first to apply for that site;

Second, that the representation that was made was false;

Third, that Viacom Outdoor knew the representation was false at the time it was made;

Fourth, the representation was material to the Plaintiff's submission of applications for billboards and the disclosure of proposed billboard locations;

Fifth, the Plaintiff relied on the representation in submitting applications for billboards and in disclosing the proposed billboard locations; and in so relying on used that degree of care that would have been reasonable in Plaintiff's situation;

Sixth, as a direct result of such representations the Plaintiff was damaged.

NO. 33

FRAUD
(by omission)

In addition to considering whether Defendant Viacom Outdoor committed fraud by misrepresentation, you may consider whether Viacom Outdoor made, or caused, a fraudulent omission. That is, that the Defendant failed, or intentionally caused another to fail, to disclose information that might reasonably have influenced the decisions of a Plaintiff before submitting its applications.

Your verdict must be for a Plaintiff on its fraud claim if you believe:

First, Viacom Outdoor concealed information from that Plaintiff by failing to reveal Viacom Outdoor would review each billboard application submitted to determine if Viacom Outdoor wanted to take the site. If you find that this information was concealed by the Defendant with the intention that a Plaintiff would rely upon the non-existence of the information withheld;

Second, that the Defendant had a duty to disclose the information which was concealed. A duty to disclose arises either where there is an inequity of condition between the parties (one party is in a superior position to the other) or where one party has superior knowledge not within the fair and reasonable reach of the other party (one party knows important information the other party does not know or have access to);

Third, that the Defendant knew that it was concealing material information from the Plaintiff that it had a duty to disclose;

Fourth, the information concealed was material;

Fifth, the Plaintiff relied on the presumption that it knew all material information necessary prior to submitting the applications for billboards and in disclosing the proposed billboard locations; and in so relying Plaintiff used that degree of care that would have been reasonable in Plaintiff's situation; and

Sixth, as a direct result of such omissions the Plaintiff was damaged.

Unless, you believe the Plaintiff is not entitled to recover by reason of Instruction Number 40, 42, 44, 46 .

For purposes of satisfying the second and third elements of this instruction, every member of the jury must unanimously agree as to the particular omission.

NO. 34

## FRAUD
### (by omission)

Your verdict must be for Defendant Viacom Outdoor under Instruction Number 33 unless you believe:

First, Viacom Outdoor concealed information from that Plaintiff by failing to reveal Viacom Outdoor would review each billboard application submitted to determine if Viacom Outdoor wanted to take the site. If you find that this information was concealed by Viacom Outdoor with the intention that a Plaintiff would rely upon the non-existence of the information withheld;

Second, that the Defendant had a duty to disclose the information which was concealed. A duty to disclose arises either where there is an inequity of condition between the parties (one party is in a superior position to the other) or where one party has superior knowledge not within the fair and reasonable reach of the other party (one party knows important information the other party does not know or have access to);

Third, that the Defendant knew that it was concealing material information it had a duty to disclose;

Fourth, the information concealed was material;

Fifth, the Plaintiff relied on the presumption that it knew all material information necessary prior to submitting the applications for billboards and in disclosing the proposed billboard locations; and in so relying Plaintiff used that degree of care that would have been reasonable in Plaintiff's situation; and

Sixth, as a direct result of such omissions the Plaintiff was damaged.

## TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTATION

The Plaintiffs have also asserted a claim that Defendant Viacom Outdoor tortiously interfered with a valid business expectation or opportunity which would have permitted them to build billboards on property owned by the railroads and to sell the billboard or lease advertising space.

Your verdict must be for a Plaintiff if you believe:

First, that Plaintiff had a valid business expectation or opportunity to gain financial benefits from leasing or selling the proposed billboard sites. To prove this, the Plaintiff must show that it had a reasonable prospect of obtaining permission to build billboards on the sites it identified in its applications and to sell or lease advertising space;

Second, that Viacom Outdoor knew of this business expectation or opportunity;

Awareness requires that the Defendant had to be actually aware that the Plaintiff's expected to build on the site if it was the first applicant and that it could sell the billboard or lease the space to advertisers. The Defendant did not have to be aware of the details, merely that the business expectancy existed. The Plaintiff cannot recover for an unknowing interference by the Defendant.

Third, that Defendant intentionally interfered with that business expectancy without justification or excuse; and

Interference is only prohibited if it is wrongful. Not every act that disturbs a business expectancy is wrongful. For example, competing for the same business is not by itself wrongful. To prove that the interference was wrongful, the Plaintiff must show that when the Defendant interfered, it engaged in fraud or misrepresentation.

Fourth, the Plaintiff was thereby damaged.

To demonstrate actual damages each Plaintiff must prove that without the wrongful interference, there was a reasonable probability that the Plaintiff would have entered into a business relationship with advertisers or a purchaser of billboards. The mere possibility of entering into a contract is not enough. However, the Plaintiff need not prove the specific amount of the loss in order to establish that they suffered an actual recoverable loss.

Unless you believe the Plaintiff is not entitled to recover by reason of Instruction Numbers _40, 42, 44, 46_ .

NO. 36

TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTATION

Your finding must be for Defendant Viacom Outdoor under Instruction Number __35__ unless you believe:

First, that Plaintiff had a valid business expectation or opportunity to gain financial benefits from leasing or selling the proposed billboard sites. To prove this, the Plaintiff must show that it had a reasonable prospect of obtaining permission to build billboards on the sites it identified in its applications and to sell or lease advertising space;

Second, that Viacom Outdoor knew of this business expectation or opportunity;

Awareness requires that the Defendants had to be actually aware that the Plaintiffs expected to build on the site if it was the first applicant and that it could sell the billboard or lease the space to advertisers. The Defendant did not have to be aware of the details, merely that the business expectancy existed. The Plaintiff cannot recover for an unknowing interference by the Defendant.

Third, that Defendant intentionally interfered with that business expectancy without justification or excuse; and

Interference is only prohibited if it is wrongful. Not every act that disturbs a business expectancy is wrongful. For example, competing for the same business is not by itself wrongful. To prove that the interference was wrongful, the Plaintiff must show that when the Defendant interfered, it engaged in fraud or misrepresentation.

Fourth, the Plaintiff was thereby damaged.

To demonstrate actual damages the Plaintiffs must prove that without the wrongful interference, there was a reasonable probability that the Plaintiffs would have entered into a business relationship with advertisers or a purchaser of billboards. The mere possibility of entering into a contract is not enough. However, the Plaintiffs need not prove the specific amount of the loss in order to establish that they suffered an actual recoverable loss.

## UNFAIR COMPETITION

Your verdict must be for a Plaintiff against Defendant Viacom Outdoor if you believe:

First, that the Plaintiff had information that constituted a trade secret; and

Second, that the Plaintiff communicated that information to the Defendant; who was in a position of trust and confidence with the Plaintiff;

Third, the Defendant used the information so as to damage the Plaintiff; and

Fourth, Plaintiff was thereby damaged.

NO. _38_

## TRADE SECRET

A trade secret is information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique or process that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

Also, in order to be considered a trade secret, the information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NO. 39

Your verdict must be for Defendant Viacom Outdoor under Instruction No. 37 unless you believe:

First, that the Plaintiff had information that constituted a trade secret;

Second, that the Plaintiff communicated that information to the Defendant, who was in a position of trust and confidence with the Plaintiff; and

Third, the Defendant used the information so as to damage the Plaintiff; and

Fourth, Plaintiff was thereby damaged.

## AFFIRMATIVE DEFENSES

### NO. 40

Your verdict must be for Defendant Viacom Outdoor if you believe Patriot Outdoor has released its claims against Defendant Viacom Outdoor in return for resolution of Patriot Outdoor's dispute with Viacom Outdoor over the I-84 billboards.

NO. 41

Your verdict must be for Plaintiff Patriot Outdoor unless you believe Patriot Outdoor has released its claims against Defendant Viacom Outdoor in return for resolution of Patriot Outdoor's dispute with Viacom Outdoor over the I-84 billboards.

NO. 42

Your verdict must be for Defendant Viacom Outdoor if you believe that Patriot Outdoor induced Defendant to believe that if Defendant granted Patriot Outdoor's application on the south side of the I-84 site that Patriot would not assert claims against Defendant and that the Defendant changed its position in reliance on that belief.

NO. 43

Your verdict must be for Plaintiff Patriot Outdoor if you do not believe that Patriot Outdoor induced Defendant Viacom Outdoor to believe that if Defendant granted Patriot Outdoor's application on the south side of the I-84 site that Patriot Outdoor would not assert claims against Defendant.

NO. 44

Viacom Outdoor contends that Patriot Outdoor's claims are barred by the accord and satisfaction defense. Your verdict must be for Viacom Outdoor if you believe that the parties agreed that the transaction in question would constitute an accord and satisfaction. An accord and satisfaction ~~is an agreement~~ is an agreement that a plaintiff will discharge a defendant for liability for their claims in exchange for certain performance of the agreement.

NO. 45

Your verdict must be for Plaintiff Patriot Outdoor unless you believe that Patriot Outdoor agreed to an accord and satisfaction with Viacom Outdoor in exchange for the right to develop one of the I-84 billboard sites.

# NO. 46

Your verdict must be for Defendant Viacom Outdoor if you believe that Patriot Outdoor, through words or conduct, stated or implied that it would relinquish its rights to bring its claims in this case.

NO. 47

Your verdict must be for Plaintiff Patriot Outdoor unless you believe that Patriot Outdoor, through words or conduct, stated or implied that it would relinquish its rights to bring its claims in this case.

No. 48

## DAMAGES – STATE LAW CLAIMS

With regard to the claims of fraud, tortious interference, and unfair competition, if you find in favor of a Plaintiff, then you must award that Plaintiff such sum as you believe will fairly and justly compensate that Plaintiff for any damages you believe that Plaintiff sustained as a direct result of the occurrence mentioned in the evidence.

If you find that a Plaintiff failed to mitigate damages as submitted in Instruction No. 49, in determining a Plaintiff's total damages you must not include those damages that would not have occurred without such failure.

# NO. 49

## MITIGATION OF DAMAGES

The Defendants have asserted a defense that any damages awarded should be reduced for the Plaintiffs' failure to mitigate those damages. You must find that the Plaintiffs failed to mitigate damages if you find that:

First, (1) Plaintiffs delayed or failed to take reasonable action in a timely manner; or (2) Plaintiffs' own conduct contributed to or worsened their damages;

Second, Plaintiffs thereby failed to use ordinary care; and

Third, Plaintiffs thereby sustained damage that would not have occurred otherwise.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under same or similar circumstances.

NO. 50

## PUNITIVE DAMAGES

If you find the issues in favor of Plaintiffs, and if you believe the conduct of Defendant Viacom Outdoor as submitted in Instructions Numbered  31, 33, 35, 37  was outrageous because of Defendant's evil motive or reckless indifference to the rights of others then in addition to any damages to which you find Plaintiffs entitled under Instructions Numbered  48 , you may award Plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish the Defendant and to deter the Defendant and others from like conduct.

NO. 5/

## ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone – including me – how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. [The form reads: (read form)]. You will take this form to the jury room, and when each of you has agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.